(No. 4980. October 4, 1928.)

MAX D. GEE, Appellant, v. GEORGE C. DISSAULT and EDWARD DISSAULT, Respondents.

[270 Pac. 1057.]

Holden & Coffin, for Appellant.

712

B. A. McDevitt, for Respondents.

BAKER, Commissioner.—On October 6, 1923, defendants, George C. and Edward C. Dissault, executed and delivered to E. C. White, then in business at Pocatello, their promissory note for $1,300, due after one year and before two years after date payable at the office of E. C. White & Co., with interest payable quarterly. Payment of the note was secured by real estate mortgage of even date with said note. On October 10, 1923, White indorsed the note, guaranteed its payment, assigned the mortgage and delivered both to the plaintiff who paid full value. The assignment was recorded on November 5, 1923. In this action plaintiff seeks to foreclose the mortgage. The defense was payment of $1,200 on the principal to White, alleged to be the agent of the plaintiff and empowered to receive payment for him, and tender of the balance to the plaintiff. The trial court determined that White was the agent of the plaintiff, that the plaintiff was estopped from denying agency and accordingly entered decree that the plaintiff take nothing other than the balance tendered which was to be paid upon the execution of satisfaction.

The law applicable to the situation in which the parties find themselves is fully and very clearly stated in *Whalen v. Vallier, ante,* p. 181, 266 Pac. 1089, and in *Nielson v. Westrom, ante,* p. 686, 270 Pac. 1054. A statement of the principles governing this case would be but a restatement of the principles announced in those cases.

The controlling question is whether there is sufficient evidence, though conflicting, to support the finding of agency and the conclusion at which the trial court arrived that payments to White were payments to the plaintiff and discharged, to the extent of such payments, the lien of the mortgage. If the findings are sustained the judgment must be affirmed.

The facts bearing upon the question of agency are: White had evidently been extensively engaged in the loan business at Pocatello for some time. At about the time the loan was made, Gee, who had theretofore purchased from White notes

secured by mortgage, inquired of White if he had a loan for about $1,300. At about the same time the Dissaults applied for a loan of that sum on the real property later mortgaged. The loan was made on October 6th, White giving his personal check for the amount thereof. Gee examined the property and on October 10th, paid to White the sum of $1,300 and received the note, indorsed and payment guaranteed, and the mortgage and assignment as stated. White's custom was to then open a ledger account with the person to whom the note and mortgage were transferred, collect the interest as it became due, receive payments on principal as they were made and credit on the ledger accounts kept with the purchaser. He retained a copy of each note upon which payments were indorsed. He kept no account with the borrower and regarded himself as the agent of the purchaser. The note and mortgage in question remained in the possession of Gee from the time they were delivered to him and they were not thereafter in the possession of White. Respondents, having no notice of the transfer of the note to Gee, paid all interest as it accrued on the unpaid principal and paid on principal the sum of $545 on July 24, 1924, and $255 on February 5, 1925. These payments were indorsed on the copy of the note which was believed by the party paying to be the original, credited to Gee on White's books but were not delivered to Gee who had no knowledge that such payments had been made. White thereafter paid the interest on the entire principal of the note as it accrued. About May 1, 1925, George C. Dissault learned that Gee, with whom he was not acquainted, was the holder of the note and mortgage. Dissault called Gee by telephone and, according to his testimony which is corroborated, said to him that he had made several payments and expected to take up the mortgage in a few days, and to which Gee answered, "White takes care of that." Gee's version of that conversation differs but little from the version of respondent. His testimony is not clear and at times he stated that nothing was said of payment of principal. In his brief in this court the following is said of his answer;

"Gee's answer, under the circumstances, was the logical answer to make, namely, 'The note provides that payments must be made at E. C. White's office; why bother me about it?'" Soon thereafter the Dissaults made a $400 payment on principal at the office of White. This payment, like the others, was passed to the credit of Gee on White's books but was not reported or paid to him. On July 3, 1925, White failed and his business was placed in the hands of a receiver. Gee promptly evidenced a greater interest in the matter than he had theretofore shown and personally called on the Dissaults respecting the mortgage and interviewed the receiver. The Dissaults then tendered the balance of the principal and interest.

It also appears that White had collected from the maker of another note held by Gee both principal and interest; that a short time prior to the conversation between him and George C. Dissault, Gee had learned that White had made such collection. Gee evidently knew that the funds so paid had passed into White's account for White gave to him his personal check, payment of which was at first refused by the bank and was not paid until White had procured other funds.

This circumstance was sufficient to charge him with notice not only that his retention of the note would not prevent White from receiving payments on principal and commingling such funds with his own but was also sufficient to create a doubt in the mind of a prudent man of White's financial integrity. Notwithstanding the information so definitely brought to him, he clearly intended that White should relieve him of all the details of collection of principal and interest for his answer, which he says was logical, to Dissault's inquiry was, "The note provides that payments must be made at E. C. White's office; why bother me about it?" He undoubtedly retained absolute confidence in White for he apparently made no inquiry either of White or the mortgagors until after White's failure.

When Dissault learned that Gee held the note he evidently doubted whether the payments were properly made to White.

He was not acquainted with Gee but learned from a city directory who he was and what he did. He was diligent and immediately called Gee by phone and, he says and the trial court must have believed him, stated to Gee that he had made payments to White and inquired if it was all right. Gee's answer that it was all right and that White was taking care of the matter was well calculated to allay any suspicion or doubt Dissault had as to the propriety of making payments to White. It should be remembered that White was then in business and it is not unreasonable to assume that if Gee had at the time of the conversation taken the position he now takes that White had no authority to receive payments on the principal, Dissault would have made the same effort to require White to account that Gee made when he received White's check.

The conduct of Gee was certainly sufficient to induce the belief on the part of the Dissaults that White was his agent empowered to receive payment of principal.

It is recommended that the judgment be affirmed, with costs to respondents.

The foregoing is approved as the opinion of the court and the judgment is affirmed, with costs to respondents.

Wm. E. Lee, C. J., and Givens and Taylor, JJ., concur.

Budge, J., disqualified.